IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Kathleen M. Tafoya**

Civil Action No. 14–cv–02011–KMT

MARK A. MCCLEARY,

    Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

    Defendant.

---

**ORDER**

---

This case comes before the court on review of the Commissioner's denial of Plaintiff-Claimant Mark A. McCleary's application for Disability Insurance Benefits ("DIB") pursuant to Title II of the Social Security Act ("the Act"). Jurisdiction is proper under 42 U.S.C. § 405(g).

**FACTUAL AND PROCEDURAL BACKGROUND**

Claimant applied for DIB in September 2011, alleging that he had been disabled by arthritis and severe shoulder injuries since March 2011. (*See* Doc. No. 7, Social Security Administrative Record ["AR"] at 129, 155.) The Commissioner denied his application. (*Id.* at 79.) Following the denial, Claimant requested and received a hearing by an Administrative Law Judge ("ALJ"). (*Id.* at 29–58, 82.) After the hearing, the ALJ determined that Claimant was not disabled within the meaning of section 1614(a)(3)(A) of the Act, because Claimant was still capable of performing substantial gainful work in the national economy. (*See id.* at 23–24.) The Appeals Council subsequently denied Claimant's request for review (*id.* at 1), making the ALJ's

decision the final decision of the Commissioner for purposes of judicial review. *See* 20 C.F.R. §§ 404.981, 422.210(a). Claimant timely sought review by the Court.

## STATUTORY AND REGULATORY BACKGROUND

Title II of the Act awards Social Security benefits to claimants who meet certain eligibility requirements. 42 U.S.C. § 423(a). To receive DIB, a claimant must be disabled. § 423(a)(1)(E). The Social Security Commissioner has established a five step, sequential process for determining whether a claimant is disabled:

1. The ALJ must first ascertain whether the claimant is engaged in substantial gainful activity. A claimant who works is not disabled, regardless of the medical findings.

2. The ALJ must then determine whether the claimed impairment is "severe." A "severe" impairment significantly limits the claimant's physical or mental ability to do basic work activities.

3. The ALJ must then determine if the impairment meets or "equals" in severity certain impairments described in Appendix 1 of the regulations.

4. If the claimant's impairment does not meet or equal a listed impairment, then the ALJ must determine whether the claimant can still perform any past work despite his or her limitations.

5. If the claimant no longer retains the ability to perform past work, then the ALJ must decide whether the claimant can perform any other gainful and substantial work in the economy despite the claimant's limitations.

*See Williams v. Bowen,* 844 F.2d 748, 750–52 (10th Cir. 1988); 20 C.F.R. § 404.1520(a)(4)(i)–(v). The claimant has the initial burden of establishing a disability in the first four steps of this analysis. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). After that, the burden shifts to the Commissioner to prove that, despite the claimant's impairments, he or she is still capable of performing substantial gainful work in the national economy. *Id.* If at any point the Commissioner conclusively finds that the claimant is or is not disabled during the five-step

review process, the analysis ends.  *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 801 (10th Cir. 1991).

## STANDARD OF REVIEW

Review of the Commissioner's disability decision by this court is limited to determining whether the ALJ applied the correct legal standard, whether the decision is supported by substantial evidence, and whether the decision comports with the relevant regulations and case law.  *Hamilton v. Sec'y of Health and Human Servs.*, 961 F.2d 1495, 1497–98 (10th Cir. 1992); *Brown v. Sullivan*, 912 F.2d 1194, 1196 (10th Cir. 1990); *Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir. 1990).  An ALJ's failure to apply the correct legal standard constitutes an independent and sufficient basis for the Court to reverse the ALJ's decision.  *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).  Likewise, an ALJ's failure to supply the Court with a sufficient basis to determine that the ALJ followed appropriate legal principles is also grounds for reversal. *Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984) (quoting *Smith v. Heckler*, 707 F.2d 1284 (11th Cir. 1983)).

## ANALYSIS

The claimant alleges the ALJ erred at steps two and four of the disability review analysis. (*See* Doc. No. 12 [Opening Br.] at 19–27, filed Jan. 7, 2015.)  At step two, the claimant argues that the ALJ failed to address and acknowledge the claimant's severe pain disorder.  (*See id.* at 25–27.)  At step four, the claimant contends that the ALJ's Residual Functional Capacity Assessment ("RFC") assessment a) fails to adequately account for the claimant's pain, b) fails to accurately incorporate an important limitation that the ALJ acknowledged, and c) fails to include any limitations arising from claimant's anxiety disorder.  (*See id.* at 19–25.)

**The ALJ's Alleged Step-Two Failure**

The Claimant argues the ALJ failed to find that the claimant's pain disorder was a severe impairment at step two. (*See id.* at 25–27.)

Step two of the disability review process requires the claimant show that he or she suffers from an impairment or combination of impairments that significantly limits physical or mental ability to do basic work activities. *Bowen*, 482 U.S. at 155 (quoting 20 CFR § 404.1521(a)) (quotations and alterations omitted). The ALJ must consider all the evidence in the case record when determining whether the claimant has a "severe" impairment at step two. 20 C.F.R. § 404.1520(a)(3). The purpose of step two of the disability review process is to "weed out at an early stage of the administrative process those individuals who cannot possibly meet the statutory definition of disability." *Bowen*, 482 U.S. at 156. For this reason, an ALJ's failure to recognize that an impairment or combination of impairments is severe at step two is harmless so long as the ALJ ultimately proceeds to the next step of the disability review process. *See Groberg v. Astrue*, 415 F. App'x 65, 67 (10th Cir. 2011); *Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008). Nevertheless, failure to recognize a severe medically determinable impairment at step two might affect the remainder of the ALJ's analysis because the ALJ must consider any severe impairments found at step two throughout the remainder of the disability review process. *See* 20 C.F.R. § 404.1523.

Here, the ALJ found the claimant had six severe impairments: "right shoulder labral tear; status post surgery . . . ;[1] degenerative disc disease of the cervical spine; obesity; affective

---

[1] By "status post surgery," the ALJ appears to be referring to the claimant's worsened shoulder problems after two surgeries. *See* AR at 18 (summarizing the progression of the claimant's shoulder pain before and after each surgery).

disorder; and anxiety disorder . . . ." (AR at 14.) The ALJ detailed the history of the claimant's right shoulder injury, the surgery to fix it, the complications arising from that surgery, the second surgery, and the pain and attempts at pain management that followed. (*See id.* at 14–15.)

Step two recognizes severe impairments, *see* 20 C.F.R. § 404.1520(a)(4)(i)–(v), and there is no dispute that the claimant's pain is a symptom of the claimant's severe shoulder-related impairments. (*See* Opening Br. at 20 [stating that the evidence demonstrates a "pain-producing" impairment].) It was therefore reasonable for the ALJ to account for the claimant's pain by listing as severe those impairments causing that pain, rather than the pain itself. Regardless of the propriety of that decision, any error committed at step two is harmless when the ALJ proceeds to step three, which the ALJ did here. *See Groberg*, 415 F. App'x at 67; *Carpenter*, 537 F.3d at 1266. The claimant does not argue that the ALJ's alleged step-two error contaminated any other step of the disability review decision. (*See* Opening Br. at 19–27.) The court therefore finds no reversible error at step two.

**The ALJ's Alleged Step-Four Failures**

The claimant argues that the ALJ's step-four RFC assessment contained three major errors: The ALJ a) failed to adequately account for the claimant's pain, b) failed to accurately incorporate an important limitation acknowledged by the ALJ, and c) failed to include any limitations arising from the claimant's anxiety disorder. (*See id.* at 19–25.)

Before completing step four of the disability review process, the ALJ must assess claimant's RFC, which is the most the claimant can do in a work setting on a regular and continuing basis despite the limitations imposed by his or her impairments. SSR 96-8p, 1996 WL 374184, at *1, 3. When determining the claimant's RFC, the ALJ must consider all the

relevant evidence and all of the claimant's medically determinable impairments. *Id.* at *2. Then, in the ALJ's written decision, the ALJ must explain how the evidence supports each of his or her conclusions. *Id.* at *7. As part of that explanation, the ALJ must "cite specific medical facts and nonmedical evidence and explain how any material inconsistencies or ambiguities in the case record were considered and resolved." *Id.*

### *Accounting for the Claimant's Pain*

Though the claimant argues that the RFC assessment failed to properly account for the claimant's pain, the claimant's underlying argument is that the ALJ erred by not fully crediting the claimant's testimony about the intensity, persistence, and limiting effects of his pain. (*See* Opening Br. at 19–23.)

When a claimant alleges disability due to subjective symptoms like pain, the ALJ must conduct a three stage analysis. *See Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012) (citing *Luna v. Bowen*, 834 F.2d 161, 163 (10th Cir. 1987)). First, the ALJ must determine whether the claimant has shown the existence of a pain-producing impairment by objective medical evidence. *Id.* Second, the ALJ must decide whether that impairment could reasonably be expected to produce the claimant's alleged pain. *Id.* At this stage of the analysis, the ALJ must accept as true the claimant's subjective allegations of pain, whether the ALJ believes the claimant or not. *See Luna*, 834 F.2d at 163. If the ALJ determines that a medically determinable impairment could reasonably have caused the claimant's alleged pain, then the ALJ will, third, consider both the objective and subjective evidence, including the claimant's testimony. *See Keyes-Zachary*, 695 F.3d at 1166. During this third stage of the analysis, the ALJ must decide whether he or she believes the claimant's testimony. *See id.*

Credibility determinations are reserved to the ALJ, and the Court will not upset those determinations when they are supported by substantial evidence. *Diaz v. Sec'y of Health & Human Servs.*, 898 F.2d 774, 777 (10th Cir. 1990). The ALJ must cite specific reasons for doubting the claimant's credibility, especially when subjective pain testimony is crucial. *See Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995). When evaluating the credibility of a claimant's pain testimony, the ALJ must consider a multitude of factors, including the extensiveness of the claimant's attempts to obtain relief, the frequency of the claimant's medical contacts, the nature of the claimant's daily activities, subjective measures of credibility within the ALJ's judgment, and the consistency or compatibility of the claimant's testimony with objective medical evidence. *Branum v. Barnhart*, 385 F.3d 1268, 1273–74 (10th Cir. 2004). The ALJ need not, however, make a "formalistic factor-by-factor recitation of the evidence." *Keyes-Zachary*, 695 F.3d at 1167 (citation omitted). Ultimately, "common sense, not technical perfection," is the Court's guide. *Id.*

Here, the ALJ found that the claimant's medically determinable impairments "could reasonably be expected to cause the alleged symptoms," but that the "claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible . . . ." (AR at 19.) The ALJ explained that "the claimant's inability to use his right non-dominant upper extremity to perform basic work-related activities is generally accepted and accounted for in his residual functional capacity," but that "the record as a whole does not fully support the credibility of the claimant's allegation of totally disabling pain." (*Id.*) The ALJ detailed the claimant's pain medications and noted that the claimant was tolerating his slow withdrawal from those medications. (*See id.*) The ALJ then focused on the claimant's left arm,

noting that the claimant did not complain of severe pain in the left shoulder.  (*See id.* at 19–20.)  The ALJ stated that the claimant's allegation that he is unable to lift a gallon of milk is inconsistent with an examination showing that the left arm was operable and "did not show tenderness, atrophy, instability," and the medical opinion of the claimant's treating physician that the claimant's left shoulder was asymptomatic and without limitations.  (*See id.*)  The ALJ also asserted that the claimant's daily activities do not support a finding of disability.  (*See id.* at 20.)  The ALJ specifically noted that the claimant's testimony that he does not do any housework "seems inconsistent with the notation from the claimant's treating physician that the claimant was engaging in more activity at home." (*Id.*)  The ALJ added that the claimant could do personal care with difficulty, and prepare leftovers and sandwiches given some extra time.  (*Id.*)  After stating that the claimant had been "innovative" in finding and "even creating some adaptive ways to perform his daily activities," the ALJ concluded that "the claimant's reported limited daily activities are given less weight when assessing his residual functional capacity than other factors discussed in this decision." (*Id.*)

Because the ALJ found that the claimant's right shoulder injury could reasonably be expected to produce the claimant's alleged pain, the only question is whether, at stage three of the *Luna* analysis, the ALJ had legally sound reasons for discounting the claimant's testimony about the intensity, persistence, and limiting effects of that pain.  The claimant first disputes that the treating doctor's statement "[the claimant is] engaging in more activity at home" contradicts the claimant's testimony that he did not do any household chores.  (*See* Opening Br. at 22.)  The claimant points out that the treating physician's notes do not say what kind of activity the claimant was doing at home and argues that it was improper for the ALJ to assume that "more

activity" necessarily meant more household chores. (*See id.*) The court agrees that evidence that the claimant was "engaging in more activity at home" is not, by itself, necessarily inconsistent with the claimant's testimony that he could not do any household chores. More information is therefore required before the statement can logically support the ALJ's intended conclusion.

The claimant also disputes the ALJ's use of the claimant's innovative and creative methods for performing daily activities as reasons to doubt the claimant's credibility. (*See id.* at 22–23.) The claimant argues that there is no evidence that these innovations relate to household chores, and points out that the "innovative" statement originates from a note in which the claimant's treating physician states that the claimant was doing worse because of the cold weather and the weaning off his pain medication. (*See id.*) Unlike the ALJ's statement about "more activities," which the ALJ linked only to the claimant's household chores, the ALJ's statement about the claimant's innovations and creativity support the ALJ's more general point that the extent of the claimant's daily activities undermines the claimant's allegations that he is totally disabled by his pain. (*See* AR at 20 [linking the claimant's innovation to daily activities, but not to household chores].) The nature of Claimant's activities is a factor which the ALJ must consider when assessing the claimant's pain testimony. *See Branum*, 385 F.3d at 1273–74 (listing as factors the nature of the claimant's daily activities).

That the "innovative" statement originated from a time when the claimant was doing worse (*see* Opening Br. at 23) only reinforces the ALJ's point that the claimant is capable of more than he admits. This finding flows logically from the evidence (the claimant innovation and creativity in overcoming obstacles). Also, the reasoning is consistent with the factors an ALJ must consider when weighing a claimant's credibility. *See Branum*, 385 F.3d at 1273–74

(listing as factors the nature of the claimant's daily activities and subjective measures of credibility within the ALJ's judgment).

Having found at least one legitimate reason supporting the ALJ's credibility determination, the court rejects the claimant's allegations of error on this issue.

### *The Accuracy of the RFC's Right-Arm Limitations*

The ALJ's RFC assessment states that the claimant is capable of "rarely reaching . . . , handling, fingering, and feeling with the right non-dominant upper extremity." (AR at 17.) The claimant contends that this is an inaccurate restatement of the limitation the ALJ actually adopted. (*See* Opening Br. at 23–24.)

The ALJ's RFC assessment states, in relevant part, that the claimant is capable of performing "less than the full range of light work . . . ." (AR at 17.) The claimant is limited to:

- Rarely reaching in all other directions, handling, fingering, and feeling with the right non-dominant upper extremity
- Lifting and/or carrying 20 pounds occasionally and 10 pounds frequently with the left upper dominant extremity
- Sitting (with normal breaks) for a total of 6 hours of an 8-hour workday
- Standing and/or walking (with normal breaks) for a total of 6 hours of an 8-hour day
- Never climbing ladders, ropes, or scaffolds
- Occasionally climbing stairs and ramps
- Never crawling
- Never reaching overhead with the right non-dominant upper extremity
- Understanding, remembering, and carrying out simple instructions

(*Id.*)  In addition, the ALJ stated that the claimant "must avoid even moderate exposure to work around hazards such as unprotected heights or moving and dangerous machinery." (*Id.*)  As part of the ALJ's RFC analysis, the ALJ relied on the opinion of the claimant's treating physician, Dr. Fernandez.  (*See id.* at 21.)  Dr. Fernandez opined that the claimant is, in the ALJ's words, "unable to lift with his right arm and reach with the right arm." (*Id.*)  The ALJ stated that this opinion was "consistent with the claimant's residual functional capacity." (*Id.*)  The ALJ added that "Dr. Fernandez stated that the claimant is unable to complete his duties as a mechanic, and he is essentially limited to using one arm only for all work activities and daily living . . . ." (*Id.*)  The ALJ gave "some" weight to the medical opinion and functional limitations indicated by Dr. Fernandez, but gave no weight to "Dr. Fernandez's opinion that the claimant should be granted Social Security benefits . . . and that the claimant is unable to work any hours per day . . . ." (*Id.*)  The ALJ explained that "the opinion that the claimant is totally disabled based on right shoulder pain alone is inconsistent with the record as a whole . . . and Dr. Fernandez's medical opinion that the claimant has no ability to use the right upper extremity but no other functional limitations in sitting, standing, or walking." (*Id.*)

The claimant is correct that the limitation stated in the RFC is not identical to the limitation the ALJ adopted.  At least twice, the ALJ indicated that she had adopted Dr. Fernandez's opinion that the claimant had "*no ability* to use the right upper extremity." (*See id.* at 21 [emphasis added].)  The ALJ also specifically stated that the doctor's opinion that the claimant is "unable to lift with his right arm and reach with the right arm" is "consistent with the claimant's residual functional capacity." (*Id.*)  Yet, the RFC contains a limitation that permits more than no use of the right arm. (*See id.* at 17.)  "Rarely reaching . . . handling, fingering, and

11

feeling" is more permissible than "unable to . . . reach with the right arm" and "no ability to use the right upper extremity." The RFC is therefore not supported by the ALJ's own findings. This is reversible error. *See Brown*, 912 F.2d at 1196 ("Substantial evidence is evidence a reasonable mind would accept as adequate to support a conclusion.").

The defendant argues that this error is harmless because the jobs that serve as the basis for the ALJ's step-five conclusion that claimant could perform substantial gainful work—School-Bus Monitor and Surveillance-System Monitor—do not contain any reaching, handing, fingering, or feeling requirements. (*See* Doc. No. 15 [Resp. Br.] at 10–11, filed Mar. 6, 2015.) The court does not agree. An error is harmless if "no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004). Here, both of the jobs the vocational expert identified at step five are unskilled sedentary work or higher. *See* DEPT. OF LABOR, NOS. 379.367-010, 372.667-042, DICTIONARY OF OCCUPATIONAL TITLES (1991), available at 1991 WL 673244, 1991 WL 673102; (Resp. Br. at 14 [stating the ALJ limited the claimant to unskilled work.]). The Commissioner's rules state that "most unskilled sedentary jobs require good use of both hands and the fingers; i.e., bilateral manual dexterity." SSR 96-9P, 1996 WL 374185, at *8. The rules also state that "[a]ny significant manipulative limitation of an individual's ability to handle and work with small objects with both hands will result in a significant erosion of the unskilled sedentary occupational base," and "[w]hen the limitation is less significant, especially if the limitation is in the non-dominant hand, it may be useful to consult a vocational resource." *Id.*

Further, it is unclear what jobs, if any, the vocational expert would have listed if the ALJ had totally precluded use of the claimant's non-dominant right arm.  At the hearing, the vocational expert first suggested that the claimant could work as a video-store clerk, regardless of which arm the claimant could use.  (*See* AR at 48–53.)  But when the ALJ changed the vocational expert's hypothetical to include greater restrictions on the claimant's right arm, without further reminding the expert that this pertained to Claimant's non-dominant arm, the vocational expert no longer listed video-store clerk as a job the claimant could perform.  (*See id.* at 51–52.)  It is unclear, therefore, what the result might have been had the hypothetical been correctly posed to the vocational expert, indicating *no* use of Claimant's non-dominant right arm and hand.  "Testimony elicited by hypothetical questions that do not relate with precision all of a claimant's impairments cannot constitute substantial evidence to support the Secretary's decision."  *Hargis v. Sullivan*, 945 F.2d 1482, 1492 (10th Cir. 1991) (quotations and citation omitted).  The ALJ's error is, therefore, not harmless, because the court cannot say with confidence that "no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way."  *Allen*, 357 F.3d at 1145.

Having discovered a reversible error, the court does not reach the claimant's remaining arguments.  The issues raised in those arguments may be resolved by reconsideration and rehearing.  The court expresses no opinion about the ALJ's ultimate determination as to whether the claimant is disabled within the meaning of the Act.

Accordingly, it is

**ORDERED** that the Commissioner's decision is **REVERSED** and this case is **REMANDED** to the Commissioner.  It is further

**ORDERED** that Plaintiff is awarded costs pursuant to Fed. R. Civ. P. 54(d)(1) and D.C.COLO.LCivR 54.1.

Dated this 24th Day of September, 2015.

BY THE COURT:

_/s/ Kathleen M. Tafoya_
Kathleen M. Tafoya
United States Magistrate Judge